# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFONSO LEOPOLODO GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:15-cv-1132-BAM<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Alfonso Gonzalez ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively.[1]  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe.  The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination denying benefits.

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 6, 8).

1

**FACTS AND PRIOR PROCEEDINGS**

On August 24, 2011, Plaintiff filed his current applications for DIB and SSI alleging disability beginning on April 26, 2010. AR 9.[2] Plaintiff's applications were denied initially and on reconsideration. AR 91-103, 104-116; 145-14. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Danny Pittman held a hearing on January 9, 2014, and issued an order denying benefits on March 14, 2014. AR 9-19. The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

**Plaintiff's Testimony**

The ALJ held a hearing on January 9, 2014, in Fresno, California. AR 28-62. Plaintiff appeared and testified. AR 28. He was represented by Melissa Proudian. AR 28. Vocational Expert ("VE") Cheryl Chandler also testified. AR 28.

Plaintiff was born on August 10, 1979 and at the time of the hearing he was 34 years old. AR 31, 275. He is married, has three children, and has an eleventh grade education. AR 32. Prior to his impairments, Plaintiff worked in the fast food industry until 2001. Thereafter, he began working as an automotive mechanic and automotive detailer through 2009. AR 34-36. While working, Plaintiff had an on-the job injury where he suffered broken ribs and a concussion. Plaintiff filed a worker's compensation claim for his injuries and received a lump settlement. AR 37-38.

When asked about his impairments, Plaintiff testified that he experiences chronic pain in his left lower abdomen related to his pancreatitis. AR 44. He testified that he was hospitalized due to his pancreatitis four or five times in the three years prior to the hearing. AR 52-53. Plaintiff further testified that he is unclear as to what triggers his pancreatitis, but when the condition flares up his pain medication is ineffective and he starts vomiting. AR 53. Plaintiff also experiences neuropathy in his arms, legs, and feet associated with diabetes. AR 44. He testified that his diabetes is uncontrolled, despite following a diabetic diet, because his pancreas "is slow." AR 54.

When asked about his medical treatment, Plaintiff testified that he has received pain injections on five separate occasions. AR 40. He also previously attended physical therapy. AR 40.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

He wears a back brace three or four times a week if he is "going to sit down for too long." AR 41. In June 2012, Plaintiff was prescribed a walker because he suffers from neuropathy in his feet and legs which causes him to frequently fall. AR 42-43. Plaintiff also uses a cane while inside his apartment. AR 42. His medications cause side effects including "sleepiness." AR 40. In addition to feeling tired, Plaintiff's medications prevent him from fully "focusing and paying attention." AR 51.

With respect to his mental impairments, Plaintiff testified that he sees a psychiatrist for his depression. AR 43. He has daily panic attacks for which he takes prescribed medication. AR 54. Plaintiff's panic attacks generally subside in five or ten minutes after taking his medication. AR 55. His panic attacks become more frequent when his abdominal pain increases because Plaintiff worries that he will need to be hospitalized. AR 55.

Plaintiff estimates that due to his impairments he can stand for up to 20 minutes before needing to sit down, walk half a block to a block using his walker, and lift a six-pack of soda cans. AR 45-47. His neuropathy causes him to drops things and he cannot bend over to pick up the items that fall. He experiences both short-term and long-term memory problems, as well as difficulty making decisions. AR 47-48.

When asked about his daily activities, Plaintiff testified that his wife helps him with medications, and they moved to an apartment with a handicap accessible restroom so that he can use the support bars to help him when bathing. AR 49. He does not go places alone and unassisted. AR 50. Plaintiff does not do any of the cooking, cleaning, or other household chores out of fear of falling. AR 49-50.

The ALJ asked the vocational expert hypothetical questions based upon the medical record and the ALJ's subsequent RFC finding. After asking the VE to contemplate an individual of the same age, education, and work background as Plaintiff, the VE determined that Plaintiff could perform work as a ticket counter, charge-account clerk, and assembler. AR 61.[3]

**Medical Record**

The entire medical record was reviewed by the Court. AR 413-1659. The medical evidence will be referenced below as necessary to this Court's decision.

///

---

[3] Plaintiff does not challenge the sufficiency of the hypothetical questions posed to the vocational expert.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 9-19. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since April 26, 2010. AR 9. Further, the ALJ identified liver disease, history of pancreatitis with pseudocyst formation, history of segmental colectomy, carpal tunnel syndrome, degenerative disc disease with history of scoliosis, chronic kidney disease, diabetes mellitus with peripheral neuropathy, and history of deep venous thrombosis as severe impairments. AR 11. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 13.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift or carry 20 pounds occasionally and 10 pounds frequently; stand and or walk for 2 hours, and sit for 6 to 8 hours with normal breaks. Plaintiff is also limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. He should also avoid concentrated exposure to hazards and extreme heat and cold. Lastly, he is limited to frequent handling, fingering and feeling. AR 13. Ultimately, the ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy. AR 17.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger,* 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the

4

Secretary applied the proper legal standards, and if the Commission's findings are supported by substantial evidence. *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987); *see also Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 2002).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

### 1. The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony

Plaintiff first contends that the ALJ failed to provide clear and convincing reasons for discrediting his subjective symptom testimony. (Doc. 18 at 15-19). The Commissioner contends, however, that the ALJ properly considered Plaintiff's subjective symptom testimony in concluding Plaintiff is not disabled. (Doc. 19 at 6-10). The Court finds substantial evidence supports the ALJ's decision to discount Plaintiff's subjective symptom testimony.

The ALJ must engage in a two-step analysis to determine the credibility of a claimant's subjective pain or symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). First, the claimant must provide objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms by providing specific findings and stating clear and convincing reasons for doing so. *Id.* The ALJ must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991); *See also* SSR 96-7p (The ALJ's

decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Other factors an ALJ may consider include: a reputation for truthfulness, any inconsistencies in testimony or conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the Plaintiff's symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Here, the ALJ found that Plaintiff satisfied the first step because Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 14. However, the ALJ found Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 14.  Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-84.  As explained below, the ALJ gave several clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### i. Daily Activities

First, the ALJ noted that Plaintiff's daily activities were inconsistent with the level of disability he alleged.  AR 16.  An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated").  The ALJ noted that Plaintiff was able to perform light housework, lift his hands, get dressed, perform personal hygiene and grooming, increase his sitting, sleeping, standing, and walking time. AR 16. Plaintiff could also perform washing and drying, in addition to helping his children get dressed, clean clothes, and attend church. AR 16, 302-303, 305, 1526. Although Plaintiff argues these activities are extremely limited, "even where daily activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

It was particularly proper for the ALJ to discount Plaintiff's credibility based on the specific daily activities performed here because these activities directly contradict Plaintiff's own statements. *Orn v. Astrue*, 495 F.3d at 638. Plaintiff stated that he was unable to dress himself, stand long in the

6

shower, that he could not lift his arms long enough to cut his hair or shave himself, and that he could not sleep or walk more than 15 minutes. AR 302, 306. These inconsistencies demonstrate that Plaintiff's allegations of disabling impairments were not entirely credible.

Based on this evidence in the record, the ALJ could properly discredit Plaintiff's testimony because his level of activity is inconsistent with the degree of impairment that he alleges. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

### ii. *Improvement with Medication*

Second, the ALJ found that Plaintiff's testimony with respect to his "extreme pain and limitations" was undermined by record evidence that demonstrated that Plaintiff's pain symptoms were well controlled by medication. AR 16. The ALJ was entitled to reject Plaintiff's credibility based on his successful response to medication. *See Gerard v. Astrue*, 406 Fed. Appx. 229, 232 (9th Cir. 2010) (unpublished) (ALJ properly discounted claimant's asserted severity of his anxiety and depression, observing in part that claimant "was responding to psychotherapy and medication"); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication).

While Plaintiff argues that the ALJ wrongly rejected his credibility based on inconsistency with the objective medical evidence (Doc. 16 at 18), the ALJ's statements were limited to Plaintiff's treatment with pain medication. Ample evidence demonstrated that medication had effectively controlled Plaintiff symptoms. AR 1259, 1530, 1656. The ALJ noted that Plaintiff's pain symptoms were not supported by the objective medical evidence because the record demonstrated that when "medicinally compliant," Plaintiff's "medication controls the pain." AR 16. The ALJ noted that Plaintiff admitted to Dr. Ky, a pain specialist, that when taking his medication regularly, he "reports significant pain relief." AR 16, 1528. The ALJ also noted that Plaintiff's "medication controls [his] symptoms without significant side effects." AR 16, 1526, 1528. The Court finds this reason supported by substantial evidence. *See also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in

determining the severity of the claimant's pain and its disabling effects.").

### iii.     *Drug Seeking Behavior*

As an additional factor, the ALJ found that Plaintiff's credibility was eroded by drug-seeking behavior. AR 16.  This is a valid factor to be considered.  *See Gray v. Comm'r of the Soc. Sec. Admin.*, 365 Fed. App'x. 60, 63 (9th Cir. 2010) (it was a clear and convincing reason to reject a claimant's reports of severe pain when "numerous physicians commented that [the claimant's] claims of pain appeared to be the result of drug-seeking").  Although Plaintiff states that evidence of this behavior throughout the record is sparse, the ALJ cited several instances, including that Plaintiff's "doctor counseled [him] on reducing his pain medication." AR 14.  The ALJ also cited an instance where "Plaintiff violated his pain contract…and the administering physician refused to fill his narcotic pain medication." AR 14; 1187.  The ALJ further noted that in 2013, another physician noted that Plaintiff is opiate seeking.  AR 15; 1443.  Additionally, the ALJ made a reference to treatment records that "suggest that Plaintiff's wife was very upset that they could no longer get pain medication." AR 16.    The ALJ may consider that a Plaintiff may be overstating his pain in order to obtain narcotics and the ALJ's finding that Plaintiff exhibited drug seeking behavior is supported by substantial evidence in the record.  The ALJ therefore properly considered this evidence in discounting Plaintiff's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

### iv.     *Noncompliance*

Finally, the ALJ also discounted Plaintiff's credibility because of his non-compliance with medications. AR 16.  An unexplained, or inadequately explained, failure to follow a prescribed course of treatment may cast doubt on the sincerity of the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In support of this  finding  the ALJ referenced two exhibits. First, the ALJ cited a discharge summary from a hospitalization in May 2013 stating Plaintiff has "been very noncompliant with his medications and diet and habits."  AR 1481.  The second record referenced by the ALJ, however, is a report from Plaintiff's treating pain specialist, Dr. Ky, stating that "[t]he patient reports that he has been taking the medication regularly as prescribed." AR 1656. Plaintiff argues that the ALJ erred by citing only one instance of non-compliance, contending that plucking this abnormality out of "1,215 pages of medical records…ignores the longitudinal course of Plaintiff's condition and treatment."  (Doc. 16 at 19). The Court agrees that the ALJ's reliance on a

8

single treatment record does not constitute substantial evidence demonstrating that Plaintiff was non-compliant with his prescribed course of treatment. Therefore, Plaintiff's non-compliance with treatment is not a clear and convincing reason for discrediting his testimony. Although this reason may have been in error, the ALJ's credibility determination will not be disturbed because there is substantial evidence to support the ALJ's other conclusions. *See, e.g., Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may have been in error).

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence when concluding Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony he found lacked credibility and the corresponding evidence that undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas,* 278 F.3d at 959. Accordingly, the ALJ's credibility determination was made with clear and convincing reasons, which were supported by substantial evidence in the record, and the sole error was inconsequential to the ultimate disability determination.

**2.     Medication Side Effects**

Next, Plaintiff asserts that the ALJ failed to properly assess the side effects of his medication by ignoring clear evidence that his medication has "debilitating effects." (Doc. 16 at 20). Plaintiff points to the consultative psychologist's opinion, credited by the ALJ, stating that Plaintiff's IQ score of 56 was "questionable due to the fact that he was quite sedated from his pain medication." AR 12. The ALJ should have, in Plaintiff's view, accounted for this "lack of concentration, focus and understanding" caused by the pain medication when formulating Plaintiff's RFC. (Doc. 16 at 21). The Commissioner refutes any error, noting the ALJ provided specific and legally sufficient reasons when he discussed Plaintiff's credibility and the lack of evidence supporting complications based on medication side effects. (Doc. 19 at 11-12).

A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 (S.S.A. July 2,

1996). An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, as well as observations by family members and the claimant's own subjective symptoms.   20 C.F.R. § 404.1545(a)(3). An RFC that does not account for all of a claimant's limitations is defective. *Valentine*, 574 F.3d at 690.

Among the factors to be assessed in an RFC determination are medication side effects. SSR 96-8p, 1996 SSR LEXIS 5. There are two different approaches in the Ninth Circuit regarding an ALJ's duty to consider medication side effects. The first approach requires that an ALJ consider all factors that might have a significant impact on an individual's ability to work, including the medication side effects. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir.1993) (*citing Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute on other grounds). An ALJ may not reject a claimant's testimony as to subjective limitations of side effects without making specific findings similar to those required for excess pain testimony. *Varney*, 846 F.2d at 585.

The second approach provides that in order for an ALJ's failure to discuss medication side effects to be error, the side effects must be a contributing factor in a claimant's inability to work. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (no error in a question to a vocational expert that did not include information about side effects because "[t]here were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock''s ability to work"); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (failure to expressly address medication side effects is not error where there was no record support for side effects); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work but failed to do so).

The Court finds no error under either approach. Contrary to Plaintiff's assertion that the ALJ failed to consider the evidence, the ALJ expressly addressed Plaintiff's medication side effects, noting that at several instances throughout the record, Plaintiff reported that his medications caused very little side effects.   The ALJ noted that "Plaintiff reported doing well on methadone [with] minimal and controllable side effects."  AR 14; 1538.  Plaintiff's pain physician, Dr. Ky noted that Plaintiff "demonstrated increased activity and functionality on opiate therapy."  AR 1538.  Further,

Plaintiff's physician reported "no significant side effects to opiate therapy" and his "level of opiate was appropriate and not going to significantly affect him." AR 1538.

While there is one reference to sedation caused by Plaintiff's medication, the bulk of the evidence does not demonstrate that medication side effects significantly impacted or contributed to Plaintiff's inability to work. Notes from Plaintiff's pain doctor demonstrate Plaintiff improved with medication and experienced little to no side effects. Further, even if Plaintiff's medications caused sedation on occasion, Plaintiff has not demonstrated that this infrequent side effect would have significant impact on his ability to work. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (treating physician's note that "medications to control [claimant's] pain also causes [sic] decreased concentration skills. . . . falls short of an informed opinion that [claimant's] pain and diminished concentration skills would significantly interfere with her ability to work"). Consequently, the ALJ did not err in the RFC determination.

**3.    Step Five Analysis**

Finally, Plaintiff contends that the ALJ failed to properly reconcile the VE's testimony that an individual with Plaintiff's RFC could perform the jobs of ticket-counter and charge account clerk. According to Plaintiff, the consultative examiner opined that his "speech was very subdued and difficult to understand" and that Plaintiff experienced significant defects in his memory, intelligence, and executive function capabilities. AR 1175. Plaintiff argues this evidence is inconsistent with the jobs of ticket-counter and charge account clerk which require level three language and reasoning skills. Plaintiff's argument is without merit.

Plaintiff does not argue that the hypothetical posed to the VE failed to include all the limitations found in the RFC, instead Plaintiff argues that because the ALJ did not include certain language and reasoning limitations in the RFC, the Step Five analysis is flawed. Because, substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations. *Thomas*, 278 F.3d at 956 ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental, supported by the record"); *Osenbrock*, 240 F.3d at 1165 ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record").

Alternatively, even if there is a conflict between Plaintiff's language and reasoning skills and the ability to perform the language and reasoning level 3 positions of ticket-counter and charge account clerk, any error was harmless as Plaintiff could still perform the final assembler occupation, with a reasoning level of 1. DOT No. 734.687-018.  AR 18.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Alfonso Gonzalez.

IT IS SO ORDERED.

   Dated:   **February 21, 2017**              /s/ *Barbara A. McAuliffe*          _
                                                                               UNITED STATES MAGISTRATE JUDGE